The People, &c., to the use of Richard Markham *et al.*, creditors of the estate of Louis Riter, *alias* Rider, deceased, appellants, *vs.* John White and James Webb, appellees.

*Appeal from Scott.*

As a general rule, whatever discharges the principal, operates to discharge the surety. But this rule is subject to an exception: where the discharge is caused by operation of law, and not by the voluntary act of the creditor.

The rights of the creditor against the surety, are not impaired by mere delay, except where the surety has the right to require the creditor to prosecute the principal, and insists on the right, by giving him notice to prosecute.

Where a Court of Probate of one county has acquired full jurisdiction of an estate, it retains that jurisdiction until the estate shall be fully administered.

Creditors, who do not labor under any of the disabilities named in the saving clause of the 115th section of 109th chapter of Revised Statutes, and who fail to exhibit their claims within two years after the grant of letters of administration, are precluded from all participation in the estate inventoried or accounted for, during that period.

The time within which claims must be presented against an estate, is to be computed from the date of the letters of administration, and not from the date of the notice requiring creditors to exhibit them.

It is a sufficient exhibition of a claim against an estate, to file the same, or a copy thereof, with the Probate Court.

When a statute of limitations begins to run, it will continue to run until it operates as a complete bar, unless there is some saving or qualification in the statute itself.

A surviving partner has a right to retain the partnership effects, and settle up the affairs of the partnership. The effects are first to be applied to the payment of the joint debts; the surplus should be divided between the survivor and the personal representatives of the deceased partner.

Should the surviving partner be guilty of laches or bad faith, the administrator of the deceased partner may interfere by bill in equity.

This was a bill in chancery, filed for the use of the creditors of Louis Riter, *alias* Rider, deceased, against the defendants, as sureties of William Parker, who was appointed and qualified by the Probate Court of Morgan county, administrator, with the will annexed, of said deceased, in September, 1838, for the settlement of said estate. The administration bond being the foundation of the suit; breaches of its condition being alleged.

The bill alleges that Rider made his will on 31st August, 1838, disposing of his property, after payment of his funeral expenses and just debts, without appointing any executor; and that he died about that time. That the will was proven before the probate justice of Morgan county, in September, 1838, who granted letters of administration, with the will annexed, to William Parker, and that he and defendants executed bond on the 5th of September, 1838. That warrant of appraisement was issued on 24th September, 1838, and that effects were appraised, on 19th October following, to $1,011 56. That effects were sold on 20th October, 1838, for $836 41, but of the terms of the sale complainants are unadvised, but they charge that the administrator did not take from the purchasers at said sale, bonds with good security, as he ought to have done, and as the law required. That Rider, at the time of his death, was in partnership with the defendant Webb, who has left the state wholly insolvent. Sets out divers claims against the estate of Rider, some of which were sworn to, and filed in the office of the probate justice, during the life of Parker, the administrator. That there is no further vestige of the administration of the estate of Rider in the probate office of Morgan county. That Parker never gave any

notice of a day to audit claims against the estate of Rider, and that he wholly mismanaged and wasted the estate, or appropriated to his own use, anterior to his death, which occurred in Scott county, about the 4th of May, 1839. That Parker died intestate, and in May, 1839, administration was granted in Scott county on his estate, to Martin Eikelburner, whose bond was in the penalty of $4,000. At about the same time, Eikelburner made an irregular, abortive and void attempt to administer on the estate of Rider, and entered into a bond for that purpose of only $100. That said administration was not a regular and operative administration *de bonis non* of the estate and effects, because it was not obtained in Morgan county. That Eikelburner having departed this life on the 15th January, 1839, defendant White was appointed administrator *de bonis non* of Parker's estate, and as such, settled up his estate, paying distributive shares thereof to a large amount, without taking any refunding bond; he having actual or constructive notice that the estate of Rider had not been settled up. That defendant White administered on the estate of Eikelburner; which estate was insolvent.

The bill avers the breach of the condition of the bond sued on, and asks that defendant White render an account of the estate of Rider, to be disposed of in due course of administration, under the sanction and direction of the Court, &c. The answer of White admits the death and testacy of Lewis *Rider*, not *Riter;* says the will was not so executed and published by Rider as to be valid as his will, and that probate of the will, and subsequent proceedings, are null and void, because in the name of *Riter*. Admits execution of the administration bond, conditioned for administration of estate of Lewis *Riter*, and that, as no such person existed, there could not be any estate to be administered upon, and White could not be chargeable as surety. Admits appraisement—giving a copy of the certificate of the appraisers, who say, "that James Webb has an equal and undivided interest in all of the above property—as the said deceased and the said Webb were partners"—and says, that Peetz, one of the appraisers, is one of the creditors to whose use the bill is filed. Admits the sale of Rider's effects, and gives the certificate of clerk and crier, that they "do verily believe that James Webb is entitled to one half of the proceeds of said sale, as he and the said deceased were partners in trade." Sale said to

have been made on a credit of nine months. Does not say whether bond and security were given by purchasers, but *supposes* that Parker took notes with adequate security. Says that Webb, at the time of the sale, took possession of the articles bid off by him, and also of other property, and that as far as he did not, took satisfactory notes, which passed into the hands of Eikelburner, as administrator of estate of Rider. Brings into Court $55 50, subject to its order. Admits partnership between Webb and Rider, and alleges that Webb had the largest interest, and that, at the institution of suit, he was insolvent, and absent from the state. States that he, White, got into the suretyship by accident; and that, as the estate of Rider consisted of his interest in partnership effects, which survived to Webb, Parker had no right to take possession thereof, and could not, by doing so, charge respondent as his security. That respondent was only willing to be surety that Parker would properly administer what might belong to Rider, and not the partnership effects of Webb and Rider. That respondent knows nothing of the justice or origin of the claims set out in the bill. If just and unpaid, statute of limitations pleaded to the same. Sets up the survivorship of the joint property in Webb, that Parker got possession of effects during the sickness of Webb, and sold it against the consent of Webb; that Webb repossessed himself of the effects rightfully, and never gave any note for the same. Denies that the estate of Rider has been mal-administered; neither admitting or denying that notice was given to the creditors, to file their claims against the estate. States death and intestacy of Parker, Eikelburner's administration on his estate, and his (E.'s) attempt to administer *de bonis non*, on the estate of Rider. Insists that the widow and heirs of Parker, and the securities of Eikelburner, should be made parties to suit; and for want of parties that bill should be dismissed.

At September term of the Scott Circuit Court, Woodson, Judge, presiding, the suit came on to be heard, on bill, answer, replication, exhibits, &c., and a decree was entered that the sum of $55 50, paid into Court by the defendant, be paid to the complainants, rateably; and that for any thing further sought to be recovered, the bill be dismissed. Complainant prayed an appeal; which was allowed. Appellant assigns for error, that the

Court did not decree that the appellee should account the sum of $836 41—amount of sale bill, with interest, &c.

DAVID A. SMITH, for appellants :

That the legal scope of the condition of the bond sued on, was and is, that Parker, or his proper legal representative, should administer on Rider's estate, according to law, and so as to secure and protect the rights of his creditors.    And that the facts of this case come within the purview. of the legal liability of defendants as sureties ; notwithstanding the principles of *strictissimi juris*, under which it is attempted for them to fritter away all obligation in the case.  13 Johns., 437.    That Eikelburner's attempt at administration on the estate of Rider, in Scott county, was a nullity,  not being according to the statute, or in the proper county.  Statute, "Wills," sec. 70.  That if this objection is not available, what was done in that county did not help or heal the past mal-administration of Parker.  5 Monroe, 583. Pawling vs. Speed's Ex'r.    As to dissolution of partnership by death of Rider, and relative and respective rights of representative of the deceased partner, and the surviving partner, see Story on Partnership, secs. 89, 90, 322, note 1 ; 326, note 3 ; 342, 346, 347, 351.    The statute of limitations, on plea of non-presentation of claims, not pleadable to suit on bond for settlement of the estate.    If recovery of the claims had been sought by suing on them in debt, none of them were barred.    Not barred by not filing them in the Probate Court, because no day in Court for presentation and adjustment of claims was ever appointed or advertised.    See title " Wills," secs. 95, 101, 115, 116.

BROWN & YATES, for appellee,

Referred to the following authorities :    3 Kent's Com., 63 to 69 ; Phillips vs. Atkinson, 2 Bro. Ch., 272 ; 7 Paige's Ch., 34, 35 ; Story on Part., secs. 326, 327, 328, 329, 330, 344 to 347 ; Washburn vs. Goodman, 17 Pick., 537 ; Reynolds vs. Hall, 1 Scam., 35 ; People vs. Moon, 3 Scam., 125–6 ; 1 Gilman, 583.

Aside from other grounds of defence, the general statute of limitations, as well as statute of limitations touching final settlements in Probate Courts, protect White from responsibility, as

administrator of Parker. Thorn vs. Watson's Adm'r, 5 Gilman, 26. As to proper parties, see 4 Scam., 426; 2 Gilman, 585.

WM. THOMAS, on same side :

The bill shows, that White has settled his accounts as administrator of the estate of Parker, and paid over to the distributees their respective portions of that estate; the complainant is therefore estopped to deny this state of facts. The evidence, however, shows, that this settlement was regularly made, as stated in the answer, on the 15th June, 1844. Upon this state of fact, it is contended: 1. That the heirs of Parker should have been made parties to the suit. 2. That no recovery can be had against the administrator. Revised Statutes, 558, sec. 102; Thorn vs. Watson, 5 Gilman, 28.

The answer of White, upon oath, shows, that the property inventoried and sold by Parker, administrator of Rider, was held and owned by Parker and Webb as partners, and that Webb, as surviving partner, had the right to the same. The evidence sustains the answer, and shows, that Rider and Webb were insolvent; or rather, that they invested all that they had, of means and credit, in building a house; that the house was blown down and was a total loss. The answer and evidence taken together show, that although Parker inventoried and sold the property, as stated in the bill, yet the property belonged to Webb, as surviving partner, and that he obtained most of it, without paying any thing to Parker. Upon this state of facts, it is contended: 1. That White is not liable for any of this property, as security for Parker, because the property did not belong to Rider. Parker had no right to its possession, Webb being the owner, as surviving partner. Gow on Partnership, 356; Story on Partnership, 459, note 1; 492; 1 Williams on Executors, top page, 449–50; ibid, 600, 602; 7 B. Monroe, 22. 2. White is not bound, as the security on Parker's bond, for any thing more than the faithful administration of the estate of Rider; he is not bound for property belonging to Webb and Rider, which Parker wrongfully converted. Burge on Securityships, 50–51; 5 Halstead's N. J. R., 35; 4 Johns. Ch., 626. Parker was appointed administrator, with the will annexed, on the 24th September, 1838; the bond sued on was executed on the 5th September, 1838; the will was proven on the 10th September,

1838; Parker died the 4th May, 1839; this suit was commenced 5th February, 1847. It is not alleged in the bill, nor does the evidence show the fact, that any of the claims now presented were ever adjudicated upon by the Court of Probate, although upwards of eight years expired between the date of the letters of administration to Parker and the commencement of this suit. It is insisted, that after two years from 24th September, 1838, the claims not exhibited before the Probate Court, as required by law, are barred. Revised Statutes, 561, sec. 115; Thorn *vs*. Watson's Adm'rs, 5 Gilman, 28.

The counsel for appellant contends that this suit is upon the bond, and that the right of action is not barred by the statute of wills. If this were true, a party, to recover a debt barred by the statute of limitations, against an estate, would only have to change the form of proceeding, and the general limitation law, as well as the laws above cited, would become nugatory. If Parker was now living, he could successfully plead the statute of limitations against all the claims now presented, except those evidenced by notes or bonds, because the right of action accrued upon all of them more than five years before the commencement of this suit. If the relators have no cause of action against the estate, the People can have none upon the bond. It is stated in the bill, that a portion of the claims brought before this Court were presented before the Court of Probate, but there is no allegation of notice to Parker, or his representative, of the time of presenting them, nor of any action of the Court, further than filing the accounts. It is insisted, that the mere filing of these accounts with the Court of Probate does not prevent the running of the statute, limiting the right of action to five years. Upon Parker's death, in May, 1839, Martin Eikelburner was appointed his administrator by the Court of Probate of Scott county; he was, also, by the same Court, appointed administrator *de bonis non* of Rider, and took possession of his estate. Anterior to 15th January, 1840, Martin Eikelburner died, and defendant John White was appointed administrator *de bonis non* of Parker, but did not succeed to the administration of Rider's estate. It is contended, that Eikelburner's estate and securities are responsible for whatever passed into the hands of Eikelburner. Under the 70th section of the act concerning wills, it was his duty to make a final settlement of the estate of Rider.

The People *vs.* White *et al.*

Opinion by TREAT, C. J.:

*First.* The cause of action sought to be enforced by this bill was never exhibited against the estate of Parker. There was a final settlement of that estate more than one year before the commencement of this suit. The creditors and devisees of Rider have, therefore, lost all remedy against the estate. R. S., ch. 109, sec. 102. It is insisted that, as the creditors are barred by the lapse of time from assigning a breach of the bond as against the estate of the principal, the sureties to the bond are thereby discharged. However plausible this position may at first seem, it cannot be sustained. As a general rule, whatever discharges the principal operates to discharge the surety. But the rule is subject to this exception: where the discharge is caused by operation of law, and not by the voluntary act of the creditor. A familiar instance is the case of a discharge in bankruptcy. It is no part of a contract, that the creditor shall make use of active diligence to enforce the obligation of the principal. There must be some affirmative act on the part of the creditor, which will discharge the surety—some act that changes the character of the contract, or is calculated to injure the surety. The rights of the creditor against the surety are not impaired by mere delay, except where the surety has the right to require the creditor to prosecute the principal, and actually insists on the right by giving him notice to prosecute. Theobald, in his treatise on Principal and Surety, at page 88, thus correctly states the law on this subject: "Forbearance, or mere passiveness, for any length of time, on the part of the creditor towards the debtor, will not discharge the surety; because, until called upon by the surety, the creditor is under no obligation to sue the debtor." The following cases are in principle precisely like the one before us : Sibley *vs.* McAllaster, 8 New Hampshire, 389 ; Johnson *vs.* Bank, 4 Smedes and Marshall, 165 ; Cohea *vs.* Commissioners, 7 ibid, 437 ; McBroom *vs.* Governor, 6 Porter, 32 ; Hooks *vs.* Bank, 8 Alabama, 580. In each of them, the creditor had lost all remedy against the estate of the principal debtor, by a failure to present his claim against the estate within the time required by law, yet it was held that the sureties were not thereby discharged.

*Second.* The attempt on the part of Eikelburner to administer on the estate of Rider in Scott county, was not authorized by

law.  The Probate Court of that county had no jurisdiction over the estate.  The will, which was the foundation of the administration, was properly admitted to probate in Morgan county; and, on the death of Parker, an administrator *de bonis non* of Rider should there have been appointed.  The Probate Court of Morgan county had acquired full jurisdiction of the estate; and the right to retain that jurisdiction, until the estate should be fully administered, was not affected by the death of Parker. The 70th section, 109th chapter, R. S., applies only to cases where the same Court has jurisdiction of both estates.  The acts of Eikelburner, in reference to the estate of Rider, are not binding on the creditors or devisees of the estate.

*Third.*  Those of the creditors who labored under none of the disabilities named in the saving clause of the 115th section, 109th chapter, R. S., and who failed to exhibit their claims against the estate of Rider within two years after the grant of letters of administration to Parker, are precluded by the express provisions of that section from all participation in the estate inventoried or accounted for during that period.  The object of these provisions is to facilitate the settlement of estates, so that creditors and distributees may ascertain how much they are entitled to receive from the estate, and may not be unreasonably delayed in obtaining it.  Creditors are required to make known their demands within two years after the grant of administration. Those free from disability, who neglect to comply with this requisition of the statute, must rely for the satisfaction of their debts on subsequently discovered estate.  Thorn *vs*. Watson, 5 Gilman, 26.  The time within which claims must be presented against an estate, is to be computed from the date of the letters of administration, and not from the date of the notice to creditors to exhibit them.  The omission of the administrator to give the notice does not relieve the creditors from the necessity of presenting their demands.  The statute operates whether publication is made or not.  Thrash *vs*. Sumwalt, 5 Alabama, 13; Cawthorne *vs*. Weisinger, 6 ibid, 714.  The fact that there was no administrator for a part of the two years, did not prevent the creditors from exhibiting their claims against the estate of Rider, and thereby avoiding the operation of the statute.  It is a sufficient exhibition of a claim against an estate to file the claim, or a copy thereof, with the Probate Court.  R. S., ch. 109, sec.

116.  The creditors had the legal right to administer on the estate of Rider, and failing to exercise the right, they ought not to complain that there was no administrator.   The limitation of two years commenced running on the grant of administration to Parker, and continued to run after his death.   It is a well settled principle of law, that when a statute of limitations begins to run, it will continue to run until it operates as a complete bar, unless there is some saving or qualification in the statute itself. Rhodes *vs*. Smethurst, 4 Meeson and Welsby, 42; Cotterell *vs*. Dutton, 4 Taunton, 826; Peck *vs*. Randall, 1 Johnson, 165; Sacia *vs*. DeGraff, 1 Cowen, 356; Rogers *vs*. Hillhouse, 3 Connecticut, 398; Langford *vs*. Gentry, 4 Bibb, 468; Granger *vs*. Granger, 6 Ohio, 17.   There is no exception in the statute in question which arrests or suspends its operation after it has once commenced to run.

*Fourth.*  The case shows that the property inventoried and sold by the administrator of Rider, or nearly all of it, was the partnership property of Webb and Rider.   Webb, as the surviving partner, had the legal right to retain the partnership effects, and settle up the affairs of the partnership.   Partnership effects are first to be applied to the payment of the joint debts; and, when they are discharged, the surplus belongs equally to the surviving partner and the personal representative of the deceased partner.   The latter has, however, the right, and it is his duty, to insist on a prompt settlement of the partnership by the former, and a division of the surplus.   In case the surviving partner is guilty of laches or bad faith in closing up the concerns of the partnership, it is the duty of the administrator to file a bill in equity to enjoin him from disposing of the property, and receiving the outstanding debts, and have the effects of the partnership placed in the hands of a receiver for final adjustment and distribution.   It is insisted on the part of the creditors that Webb waived his right to retain the joint property, and settle up the affairs of the partnership, and assented to the sale of the property by the administrator.   If such was the case, the administrator became responsible for the proceeds of the sale; and his sureties are liable to the creditors and devisees, if he did not faithfully account for the same.   But it is contended on behalf of the sureties, that the property was taken and sold by the administrator against the consent of Webb; and that subse-

quent to the sale, an arrangement was made between them, by which Webb was permitted to receive the property, as surviving partner, and apply it in the adjustment of the partnership concerns. The proof is inconclusive and unsatisfactory, and as the cause must be remanded, the parties will be permitted to adduce any additional evidence on this branch of the case. As the case now stands, the proof shows, at least, that the administrator became chargeable with all of the property inventoried, which was not bid off at the sale by Webb and Linkins; and the creditors are entitled to a decree for an account to that extent. The collection of the note of Benjamin, by Eikelburner, was unauthorized; and unless the proceeds have been applied in the payment of the debts of Rider, the sureties of Parker are responsible therefor. If, upon a further investigation of the case, it shall turn out that Parker disposed of the partnership property with the assent or acquiescence of Webb, then, as administrator, he became chargeable with the proceeds; and if he has not faithfully accounted for them, his sureties must make good the loss sustained by the creditors. Their liability, so far as the partnership creditors are concerned, extends to the whole of the property received by the administrator, and not accounted for; but as to the individual creditors of Rider, only to one half of the property, for after the joint creditors are paid, Webb is entitled to a moiety of the surplus. But if, on the other hand, it shall appear that the property, or any part thereof, was surrendered up in good faith by the administrator to the surviving partner, on his claim of right to dispose of it in winding up the affairs of the partnership, then the sureties are not to be held responsible for what was thus returned to Webb.

*Fifth.* The heirs of Parker are not necessary parties. The object of the suit is not to charge the estate of their ancestor. The creditors and devisees of Rider have now no cause of action against his estate. The sole object of the suit is to charge the sureties on the bond. But the devisees of Rider should be made parties. After the debts are paid, they are entitled to the *residuum* of the estate. They are therefore directly interested in defeating the claims of the creditors, for in the proportion the amount of the creditors' demands is diminished, will their claim against the sureties be increased. If an administrator *de bonis non* of Rider shall be appointed and made a party, it will not be

necessary to make the devisees parties. The administrator would represent their interests.

The decree of the Circuit Court must be reversed, and the cause remanded, with leave to the complainants to amend the bill, and to both parties to take additional testimony. The costs of this appeal to be equally divided between the parties.

*Decree reversed.*