HENRY R. GREEN, JOSEPH A. PATTERSON, JOHN HOLMES and JOHN SNEDECKER,

*v.*

NATHANIEL W. GREEN.

1. HIGHWAYS — *located by township authorities.* A public road located by highway commissioners, must be opened in five years, or the right of way will revert to the owner of the land, and the road become vacated.

2. SAME — *opening of the same.* To avoid the vacation of a road thus laid out and located, it is necessary that it should be opened its entire length within five years. It is not sufficient to open only a part of such road.

3. INJUNCTION — *to stay the opening of such a road.* If the town authorities fail to procure the right of way, and fail to provide means to pay for the same, until the day before the five years expire, and it is apparent that the road cannot be opened within the time, a court of equity may restrain the town officers from opening a small portion of the road before the time expires.

4. EQUITY — *jurisdiction.* When officers may perform an act under color of law, which is useless to the public and injurious to an individual, a court of equity may take jurisdiction to prevent irreparable injury.

5. SAME — Equity will not permit a road to be established through a township

simply for the purpose of procuring a road for a part of the distance. To permit such proceedings for that purpose would operate unjustly, if not as a fraud upon property holders.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. JAMES HARRIOTT, Judge, presiding.

This was a suit in Chancery, commenced by Nathaniel Green against Henry R. Green, Joseph A. Patterson and John Holmes, acting as commissioners of highways in road district No. 6, in the town of Delavan, in Tazewell county. The bill alleges that complainant was, and had been for more than five years preceding the time of filing the bill, the owner of the N. W. qr. of section 23 in township 22 north, of range 4 west of the third principal meridian, which was then, and had been for more than five years previous thereto, in cultivation and inclosed with fences.

The bill also alleges, that, on the 27th of June, 1857, the commissioners of highways of the town, on the petition of a number of voters, laid out a public road in the town, running across the town; that it commenced at the northeast corner of section twenty-four, thence west on section lines to the township line on the west; that he at that time desired to have the road located and opened for travel, that he might thereby have a convenient outlet to the public roads west of his farm, which ran north and south from Springfield to Pekin and Peoria, in Illinois, which latter named cities were his only available markets for his produce; that, in consideration that the road would be speedily opened, he released the right of way through his farm.

The bill alleges that the road has not been opened, and that, if it were only to be opened through his land and to the east line of the township, without opening it through to the west side of the township, would greatly harass and injure complainant; that it would occasion great outlays and expenses, without corresponding advantages; that owners of land west of him had claimed and damages had been assessed for running the road over their land, which had not been paid, nor had taxes been

levied or money provided for payment thereof; and that the road has been treated as vacated for its entire length west of complainant's farm, and that five years from the time the road was located will have elapsed before the road can be opened, and that all attempts to open the road would be a mere trespass, and so far as made on complainant's land would produce great injury and a multiplicity of suits; that the overseers of roads are threatening to open the road through his land, and to remove his fence and break up and destroy his crops.

The bill makes the commissioners and John Snedecker, overseer of highways, defendants; prays process, and an injunction to restrain them from opening the road through his farm. This bill was filed on the 26th of June, 1862, and a temporary injunction awarded. Afterwards, defendants filed a demurrer to the bill, which was, on the hearing, overruled, and a decree was rendered making the injunction perpetual. Defendants bring the cause to this court on a writ of error, and ask a reversal of the decree, and assign for error the overruling the demurrer and making the injunction perpetual.

Messrs. Bangs, Shaw and Bergen, for the plaintiffs in error.

1. The trespass, alleged to have been threatened in this case, is not destructive to the inheritance; those threatening it are not insolvent; the defendant's injury would not be irreparable; the defendant's right has not been established at law; and if he should be injured, he has an adequate remedy at law without any such impediment thereto as would require the extraordinary interposition of chancery, by writ of injunction. *Jerome* v. *Ross*, 7 Johns. Ch. 315.

2. Having released the right of way, the defendant is placed in the same situation as if his damages had been legally assessed and paid, and he can now object to the opening of the road. Scates' Comp. 354, sec. 6.

3. The bill undertakes to set up a failure of the consideration for which the release was given. No consideration is necessary to support a release of the right of way.

4. Prepayment of damages is not necessary. A road may

be opened without such prepayment of damages. *Case* v. *Thompson*, 6 Wend. 634.

5.    There is no allegation in the bill that the commissioners had not given complainant notice to move his fences.    The pleading is to be taken most strongly against the pleader, and the court will presume that such notice was given; and if such notice was given, the commissioners might at any time after-wards proceed to open the road and remove the fences. *Mills* v. *Thornton*, 26 Ill. 300; Scates' Comp. 356, sec. 24.

When an order establishing a road is admitted, the court will presume that the previous steps required by the statute have been taken. *Ferris* v. *Ward*, 4 Gilm. 499; *Dumoss* v. *Francis*, 15 Ill. 446.

6.    The owner of land over which a road is proposed to be laid out must claim damages at the proper time.    He must object in the first instance to the location of the road across his land, or he will be concluded from afterwards insisting upon damages, or objecting to the opening of the road. *County of Sangamon* v. *Brown*, 13 Ill. 212; *Taylor* v. *Marcy*, 25 id. 502.

7.    This suit is premature.    The five years from the time of laying out the road had not elapsed before this suit was brought; and but for the injunction in this case, it may be, that by the payment of damages and the consent of parties, the whole road would have been opened within the five years, and that the road would not have become vacated, and that the land would not have reverted to its original owners.

8.    The defendant in error had the right to compel the commissioners of highways to open the road west of his land, and if he neglected so to do, he cannot object, for that reason, to the opening of the road over his own land. *City of New York* v. *Mapes*, 6 Johns. Ch. 46; *City of New York* v. *Dover Street*, 18 id. 505; *Stafford* v. *The Mayor*, &c., *of Albany*, 6 id. 1; *Boxford* v. *County Com. of Essex*, 7 Pick. 337.

Messrs. Cooper and Moss, for the defendant in error.

I.    The bill being taken as true, presents the case of public officers, *colore officii*, attempting to open a public road through

the enclosed and cultivated lands of complainant, under pretext of an assumed grant of right of way, no longer binding or in force—the conditions on which it was made having by the acts and default of such officers, or those they represent, failed and become impracticable.

This is a wrong to prevent which an injunction will lie, because—

1st. It aims to appropriate to the public the benefits to be derived from such grant, without rendering to the grantor the equivalent for which he bargained.

2d. The release having ceased to bind the complainant, he stood as though it had never been given, and his land could not be taken for the road without his consent, otherwise than by having his damages regularly assessed and paid, or provided for under the law.

3d. The injury threatened, proceeding from public officers acting under claim of right, and being permanent in its character, and tending to multiply lawsuits, is such as chancery will intervene by injunction to prevent. Where public officers are proceeding illegally, under claim of right, to impair public or private rights, or where multiplicity of suits can be thereby prevented, an injunction will lie, especially if the wrong meditated is *continuing* in its nature and calculated to work permanent injury, and this though the remedy by action of trespass is also clear. *Mohawk & Hudson R. R.* v. *Archer*, 6 Paige, 85; *Hush* v. *Trustees Morden College*, 1 Ves. Sen. 183; *Belknap* v. *Belknap*, 2 Johns. Ch. 453; *Smith* v. *Bangs*, 15 Ill. 399; *Green* v. *Oakes*, 17 id. 249, and cases cited.

II. Unless a public road is *opened* within five years from the time it is laid out, it is *vacated* by operation of law. Sec. 17, act February 27, 1854, Purp. Stat. 1171.

The road in question had become practically vacated, and the attempt of the defendants below to open it was therefore unwarranted and illegal.

It was laid out June 27th, 1857. Up till June 26th, 1862, no move to open it had been made. It was inclosed its whole length of six miles, and damages were claimed and allowed the

owners of lands along the route. The right of way was not obtained, nor damages released. No fund was raised to pay them, and the commissioners and town not only neglected, but *refused* to provide for their payment. As only one or at most two days remained, this made the opening of the road, *as laid out*, legally impracticable, even if not physically so; and was in fact a virtual abandonment of it, as a highway, by the public. The bill shows that it was so treated, and complainant was justified in averting an act on part of the defendants which could only prove mischievous and abortive. If not paid, the damages allowed must at least be *provided for* before the road can be opened. Art. 24, Township Organization, Purp. Stat. 1162–67, inclusive; *State* v. *C. & M. R. R. Co.,* 26 Ill. 436.

III. Had two days more, at most, elapsed, all will admit the attempt to open the road would have been illegal, as the road would then have been *vacated* — a nullity under the law. Did beginning within the time cure the difficulty, so as to authorize completion afterwards? We conceive it did not.

*The road* is to be opened *within* five years. This means *the whole road,* not a part of it. The law intends to guard against vexation and public and private nuisance resulting from indefinitely protracting jobs of this kind, *after they are entered upon,* no less than the evils resulting from indefinite postponement after laying out, and before entering upon the work of opening the road. Hence its positive terms — unless *opened* within five years, the road " *shall be deemed to be vacated.*"

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The statute regulating township organization has declared, that unless a public road, surveyed and located by the town authorities, shall be opened within five years, the same shall become vacated. Scates' Comp. 364, § 17. Such non-user for the limited period operates as an abandonment, and remits the owners of the land which had been condemned for the use of

the public to their former rights in the property. And whether the right of way has been obtained by release or by condemnation or payment of damages, the right of the owner to resume the exclusive use and occupancy of the land is complete and unqualified after such abandonment. Had the full period of five years expired after this road was located without its being opened, there could be no question of the right of defendant in error to prevent the opening of the road through his premises.

The bill alleges, and the fact is admitted by the demurrer, that the road was located across the township, on the 27th day of June, 1857, and the commissioners proposed to open that portion passing through the premises of defendant in error at the date of suing out the writ of injunction, which was on the 26th of June, 1862. The bill alleges that the land through which the road was located, for its whole length west of defendant in error, was inclosed and in cultivation, and the right of way had not been procured by release from the owners or by payment of the damages assessed for the purpose, nor had the means been provided for their payment, and that it was impracticable within the five years to pay the damages and open the road, as notices had not been given to the owners. It was also claimed that the road had thereby been abandoned, and the commissioners and those acting under them would become trespassers, by entering upon the premises of defendant in error and opening that portion of the road. The allegations of the bill, which must be taken as true, show that the purposes which had induced the location of the road had ceased to operate. The road petitioned for, surveyed and established, was an entirety. These acts were all performed to create an entire road, and not to create sections or parts of a road. It was to obtain a thoroughfare on this line for the public across the township, and not across the farm of defendant in error. And to have avoided vacating the road, it should have been opened its entire length within five years from the time of its location. That effect could not be avoided by opening portions within the time. Had all the road, except the portion running through these premises, been opened, or had it been practicable to open

the whole road before the expiration of the time, and the commissioners had in good faith been proceeding to that end, it would have sufficed. But this we have seen was impossible, and had they proceeded it would only have resulted in opening the portion running through the premises of defendant in error.

The design in establishing this road would not have been accomplished by opening this portion, as the remainder would have remained unopened after the five years had expired, and the whole road thereby vacated, and defendant in error then could have closed this portion. Thus it will be seen, that to have permitted the commissioners to proceed, would have resulted in no benefit to the public, as, the day after they had opened the road, defendant could have rightfully closed it up and prevented travel over that portion. So the act would have been useless to the public and injurious and expensive to defendant in error. The law never requires the performance of a useless act, and chancery will interpose to restrain its performance when attended with injury to others. In this case, had the commissioners proceeded to open this portion of the road, it would have been done under color of law, and they could have justified the act in an action for damages. This, then, confers jurisdiction upon a court of equity to prevent an injury for which a recovery could not have been had at law; and brings the case within the rule that equity will restrain an act which, if performed, would produce irreparable wrong and injury.

It is, however, urged that defendant in error, having released the right of way for the road over his premises, is now estopped from objecting to its being opened. But the bill alleges, and it is admitted to be true by filing the demurrer, that the consideration moving him to give the release was to obtain the road as located. Having failed to obtain the road, it would at least be unjust to hold that right, and yet deprive him of the consideration that induced the release. It was not given to obtain a passway over his own farm, but to obtain a road across the township from the east to the west line. Nor is it any answer to say that it might be extended in the future, so

as to accomplish the original design, by a new proceeding had for the purpose, as no such presumption can be indulged.

·The law allowing the town authorities five years within which to open new roads; is liberal, and affords ample time within which to construct them; and if required for the public convenience, it can hardly be supposed that such a road would remain so long unopened. The authorities having failed for five years, lacking but a single day, to open this road, and then only propose to open a small portion of the line, it would seem that public necessity did not require its construction. If, however, the wants of the public were found to require only the east and not the west end of the road, the course to have been adopted was to have proceeded under the law, to have that portion vacated, precisely as is required to vacate any other road. But to permit a road to be located its full length, merely to acquire a road for only a part of the distance, would be contrary to the design of the law, if not a fraud upon a portion of the property holders, through whose land it is run, as well as those who petition for its location. If in this case the east half of this road is necessary to accommodate the public, it can be located in the mode prescribed by the statutes. But having abandoned the road by failing to open it within the period limited by the statute, the road has become vacated. The Circuit Court, therefore, committed no error in overruling the demurrer, and rendering the injunction perpetual, and the decree must be affirmed.

*Decree affirmed.*