C. STUART BEATTIE

*v.*

RODNEY M. WHIPPLE *et al.*

154    273
199    ⁴472

*Filed at Ottawa October 29, 1894.*

1. LIMITATIONS—*when action runs from disseizin, only.* The Statute of Limitations begins to run against a suit to recover land conveyed by an attorney under a power executed by a married woman incompetent to appoint such attorney, from the date of her disseizin under such deed.

2. SAME—*effect of Married Woman's act on actions by femes covert.* Married women were taken out of the saving clause in favor of *femes covert* in the limitation laws, by the Married Woman's act of April 24, 1861, empowering them to institute and maintain suits for their separate property, and control and manage such property as though they were *femes sole.*

3. SAME—*death of married woman will not arrest running of statute.* The running of the Statute of Limitations, commencing during the lifetime of a married woman, is not arrested by her death, but continues to run against her heirs, although they are minors.

4. SAME—*rights of remainder-men where statute begins to run in ancestor's lifetime.* The rule that a cause of action does not accrue in favor of a remainder-man or reversioner, or the statute begin to run against him, until the termination of the preceding estate, does not apply where the statute began to run during the lifetime of the ancestor from whom both the precedent estate and the remainder were derived.[*]

---

[*]An extensive note on the subject of adverse possession against remainder-men and owners of future estates is found with the Alabama case of *Gindrat* v. *Western Railway of Alabama,* 19 L. R. A. 839,

154—18

5. ADVERSE POSSESSION—*what statements in petition will show.* A petition under the Burnt Records act, stating a conspiracy to defraud plaintiff's ancestor by means of a forged and recorded power of attorney, under which another took a deed and kept possession of the premises for twenty-six years, shows on its face that the possession was adverse to the claim of title of plaintiff and those through whom he derives his ownership.

6. SAME—*when acceptance of deed does not change hostile possession.* The acceptance by one claiming land adversely to a married woman, of a conveyance from her husband, after her death, of all his interest in the premises, does not change the hostile character of the possession, or work an abandonment of the title under which he claims, or subordinate it to the title descending to her heirs.

7. EQUITY—*will not perform a useless act.* Equity will not do that which will be of no benefit to the party asking it, and an injury to others.

8. BURNT RECORDS—*when title will not be restored under act.* A title will not be restored, under the Burnt Records act, as against parties who have acquired title by adverse possession under a claim of title recorded before the destruction of the records, under which third parties, in reliance upon the records, have acquired rights, and upon whose title the restoration would work a cloud.

APPEAL from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

This is a petition under the Burnt Records act, filed on August 26, 1891, by C. Stuart Beattie, the appellant, in the Cook circuit court. That court sustained a demurrer to the petition, and the petitioner stood by his petition and it was dismissed out of court, and he brings the case here for review.

The petition, in substance, states the destruction by fire of the records in the recorder's office of Cook county on October 8, 1871; that petitioner claims title to the south half of lot 5, in Maher's subdivision, etc., as owner of the fee, subject to the estate of the tenant by curtesy; that on November 1, 1862, Eliza B. Beattie became the owner of the real estate in question by deed from Francis Dodd, who had title in fee, and took and retained possession thereof, as a homestead, from that time until about August 1, 1863, when she permitted Rodney M.

Whipple to take possession of the property under a verbal agreement to purchase, and that Whipple remained in possession of the premises, as a residence, from thence until about January, 1890, when he left the premises, which have since remained unoccupied; that Whipple, Ridgely, Smith, Caulfield and Pollard, conspiring to defraud Eliza B. Beattie, on the 17th day of February, 1864, caused three writings to be recorded in the recorder's office, namely: A power of attorney dated the 10th day of June, 1863, in which Charles J. Beattie and Eliza B. Beattie appoint B. G. Caulfield their attorney in fact to make disposition of this lot; a warranty deed dated October 9, 1863, from Charles J. and Eliza B. Beattie, by B. G. Caulfield, their attorney in fact, to Vincent Ridgely and John T. Smith, purporting to convey this lot and other land for a consideration of $9000; a warranty deed from Ridgely and Smith to John K. Pollard, dated October 9, 1863, purporting to convey the fee simple title in this lot for a consideration of $7500; that Pollard, by quit-claim deed dated November 23, 1866, conveyed the premises to Whipple, for a consideration of one dollar; that the said power of attorney is a forgery, and that Eliza B. Beattie never executed the same, nor any conveyance of said property; that Eliza B. Beattie died intestate February 21, 1868, in Livingston county, Illinois, leaving her surviving her husband, Charles J. Beattie, and petitioner and Frank C. Beattie, her only children and heirs-at-law, who are issue of the marriage of Charles J. and Eliza B. Beattie; that November 10, 1868, Charles J. Beattie conveyed his interest in said premises to said Vincent Ridgely and John T. Smith; that Rodney M. Whipple subsequently conveyed to J. H. Lombard, who further conveyed to Abby A., wife of Rodney M. Whipple, and that the other defendants are nominal parties, or hold as mortgagees of Abby A. Whipple. The petition also alleges that Eliza B. Beattie never received any consideration for parting with the premises; that the deed by

which she obtained title, as well as the pretended power
of attorney, described her as a married woman, and that
for a long space of time before the date of said pretended
power of attorney, and during all the time following, until
after the recording of said deed to Ridgely and Smith,
she was continuously an actual resident of this State
and at no time absent therefrom ; that Charles J. Beattie
is still living, and that Frank C. Beattie has conveyed
his interest to petitioner.    The petition prays that title
may be established in petitioner in fee, subject to the life
estate of Charles J. Beattie and his assigns, and that all
parties claiming under the Caulfield power of attorney
may be enjoined, etc.

ROBERT HERVEY, for appellant :

A married woman can alien her lands, by conveyance,
only on such terms and in such mode as the statute
authorizes, as her power to convey by deed is wholly de-
rived from the statute.  *Hoyt* v. *Swar*, 53 Ill. 139 ;  *Moulton*
v. *Hurd*, 20 id. 137;  *Lane* v. *Soulard*, 15 id. 123 ;  *Bressler* v.
*Kent*, 61 id. 426 ;  *Cole* v. *Van Riper*, 44 id. 58 ;  *Rogers* v. *Hig-
gins*, 48 id. 212.

The power of attorney bears date the 10th of June,
1863.    The execution of the power was prior to February
17, 1864,—the date of the deed to Ridgely and Smith.

At the time of the pretended execution of this power
of attorney, and the making of the deed by Caulfield
under the assumed power, the law of this State concern-
ing conveyances by married women of their lands was
found in section 17 of chapter 24 of the Revised Statutes
of 1845, entitled "Conveyances," as subsequently amended
by act of February 22, 1847.    The original act provided
exclusively for conveyances by married women residing
in the State, but gave no power to delegate the author-
ity.    The amendment (sec. 2) provided for conveyances
by *femes covert* residing out of the State, and that such
*femes covert* might appoint attorneys to convey for them.

This court had before it, in *Rogers* v. *Higgins*, 48 Ill. 212, language of the act of 1833 which is similar to the language of the 17th section of the act of 1845, and it was held that such words did not permit a married woman to appoint an attorney in fact to convey her land.

The act of 1861 did not authorize a married woman to convey her realty in any other manner than that pointed out by the Statute of Conveyances. *Cole* v. *Van Riper*, 44 Ill. 66; *Bressler* v. *Kent*, 61 id. 430.

Immediately upon the death of Eliza B. Beattie her husband took an estate for life in her realty, as tenant by curtesy. *Beach* v. *Miller*, 51 Ill. 207; *Cole* v. *Van Riper*, 44 id. 58.

While the life estate is existing, petitioner has no right of entry, and no statute of limitations has run against him. *Shortall* v. *Hinckley*, 31 Ill. 225; *Jacobs* v. *Rice*, 33 id. 370; *Higgins* v. *Crosby*, 40 id. 260; *Orthwein* v. *Thomas*, 127 id. 568; *Mettler* v. *Miller*, 129 id. 630; *Gregg* v. *Tesson*, 66 U. S. 150.

The facts set out in this petition show a perfect legal title in petitioner subject to the life estate, and the court had power to entertain the petition and grant both the principal and incidental relief asked. *Gormely* v. *Clark*, 134 U. S. 338; *Mulvey* v. *Gibbons*, 87 Ill. 367; *Robinson* v. *Ferguson*, 78 id. 538; *Smith* v. *Hutchinson*, 108 id. 662; *Bradish* v. *Grant*, 119 id. 606.

Lapse of time is permitted, in equity, to defeat an acknowledged right, on the ground, only, of its affording evidence of a presumption that such right has been abandoned. It therefore never prevails when such circumstance is outweighed by opposing facts and circumstances. *Nelson* v. *Carrington*, 4 Munf. 332.

The Caulfield deed purported to convey the husband's estate, and was, *prima facie*, sufficient for that purpose, regardless of its operation upon the wife's estate. *Higgins* v. *Crosby*, 40 Ill. 79.

By operation of law upon the acts of the parties, the possession and the right to sue for possession were in the same person, and stopped the running of all statutes of limitation.   *Seagram* v. *Knight*, 36 L. J. Ch. 918.

The demurrer admits that Whipple entered by permission of the owner of the fee, and that his color of title is derived through the Caulfield deed.   This source of title being traced to defendants, it is conclusive on these facts that their entry was under it.   *Holbrook* v. *Brenner*, 31 Ill. 501; *Mettler* v. *Miller*, 129 id. 645.

The rule which stays the running of the Statute of Limitations against a remainder-man or reversioner does not exist by reason of any disability in the holder of such estate to assert his present right, but because he has no present right to assert.   *Higgins* v. *Crosby*, 40 Ill. 79 ; *Orthwein* v. *Thomas*, 127 id. 554; Limitation act, sec. 3, clause 3.

LYMAN & JACKSON, for appellees :

The Married Woman's act of April 24, 1861, authorized her to bring an action to protect her separate property. *Castner* v. *Walrod*, 83 Ill. 171; *Emerson* v. *Clayton*, 32 id. 493 ; *Beach* v. *Miller*, 51 id. 206 ; *Chicago* v. *McGraw*, 75 id. 566; *Hayner* v. *Smith*, 63 id. 430 ; *Enos* v. *Buckley*, 94 id. 458; *Geisen* v. *Heiderich*, 104 id. 537; *Safford* v. *Stubbs*, 117 id. 392.

The statute having commenced to run, was not arrested by the death of the owner, but ran against the heir, though a minor.   *Crowell* v. *Druley*, 19 Ill. App. 526 ; *Rhodes* v. *Smethurst*, 4 M. & W. 42.

A party can only avail himself of a disability existing at the time the action accrued.   *Mercer* v. *Selden*, 1 How. 37.

The wife was under no disability, so the statute, began to run when the action accrued.   An heir cannot add his disability (of infancy) to that of his ancestor.   *Mitchell* v. *Berry*, 1 Metc. (Ky.) 262.

The statute of 1861 did not change the right of the husband, and did not assume to do so.   It did not authorize the wife to convey separately from the husband, nor

in any manner was the husband's right to contest abridged as to lands of which the wife was seized before the act. *Noble* v. *McFarland*, 51 Ill. 226; *Koehler* v. *Miller*, 21 Ill. App. 557.

BAKER, J.: The petitioner, appellant here, insists that no title passed by the deed that was executed by Caulfield, as attorney in fact of Eliza B. Beattie, now deceased. For this claim two reasons are assigned: First, that the power of attorney was never executed by her; and second, that when the alleged power of attorney was made there was no power in a married woman residing in this State to appoint an attorney to convey lands owned by her and located in this State. If we assume, for the purposes of this decision, that these contentions are well founded, yet the twenty years' limitation law is an insurmountable barrier to the enforcement of the title of appellant. Eliza B. Beattie, the ancestress of appellant and his brother, was disseized in her lifetime, and the twenty years' limitation is to be computed from the date of such disseizin. Rev. Stat. chap. 83, secs. 1-3.

It appears from the petition that Whipple and his wife were in the actual possession of the premises, as a residence, for more than twenty-six years, continuously, prior to the filing of such petition, and that such possession was adverse to the rights of the petitioner and of his ancestress and brother, through whom he claims. The averments of the petition are to be taken most strongly against the party whose pleading it is, and when petitioner states that Whipple conspired with Ridgely, Smith, Caulfield and Pollard to defraud Eliza B. Beattie by means of a forged power of attorney, which they caused to be recorded in the recorder's office, and took a deed of the premises that was based on such forged power of attorney, and kept possession of the premises for twenty-six years, we cannot understand otherwise than that the title so procured, and the possession under it,

were in hostility to the claim and title of the petitioner and of those through whom he derives his supposed ownership. Nor does it seriously militate against this view that more than five years after the inception of this hostile title, and after the death of Eliza B. Beattie, the grantors of the grantor of Whipple received from the surviving husband of said Eliza B. Beattie a conveyance of all his interest in the premises. Such act on their part did not change the hostile character of the title that was then vested in Whipple, nor did it work an abandonment of that title, nor subordinate it to the title that had descended to the heirs of Eliza B. Beattie.

The effect of the Married Woman's act of April 24, 1861, was to authorize and empower a married woman to institute and maintain suits for her separate property, and to control and manage such property as though she was a *feme sole;* and to take her out of the saving clause in favor of *femes covert* in the limitation laws. Gross' Stat. (3d ed.) chap. 66, sec. 14; *Castner* v. *Walrod,* 83 Ill. 171; *Enos* v. *Buckley,* 94 id. 458; *Safford* v. *Stubbs,* 117 id. 389. Therefore the twenty years' limitation law began to run against Eliza B. Beattie and against her title probably from February 17, 1864, and at all events from December 1, 1866. She lived for more than fourteen months after this latter date, and during all that time there was nothing to prevent her from bringing suit to recover possession of the premises, and as the statute once began to run it was not arrested by her death, but continued to run against her heirs, even though they were minors. The general rule is, that when a statute of limitations begins to run it will continue to run until it operates as a complete bar, unless there is some saving or qualification in the statute itself. *People* v. *White et al.* 11 Ill. 341; *Peoria County* v. *Gordon,* 82 id. 435.

It is claimed that the fact that on the death of Eliza B. Beattie, in 1868, a life estate consummate by the curtesy vested in her husband, Charles J. Beattie, had the

effect to suspend the running of the statute against the fee simple estate that descended to the heirs. We fully recognize the rule that a cause of action does not accrue in favor of a remainder-man or a reversioner, or the statute begin to run against him, until the termination of the preceding estate. The doctrine is, that the Statute of Limitations will not affect the fee simple title if the particular estate exists at the time of the disseizin. Angell on Limitations, (6th ed.) 377. In *Dugan* v. *Follett*, 100 Ill. 581, the adverse possession commenced during the existence of the life estate. In *Orthwein* v. *Thomas*, 127 Ill. 554, Thomas Osborn was tenant by the curtesy from 1832 until his death, in 1863, and the adverse claims of the appellees had their origin in conveyances made by him during the time intervening these dates. And in *Mettler* v. *Miller*, 129 Ill. 630, there was no disseizin of Maria Ross in her lifetime, since Isaac Ross, her husband, as the law then stood, was tenant by the curtesy initiate, and as such had a freehold estate for the lives of himself and wife, with a freehold in remainder to himself for life as a tenant by the curtesy consummate, and the deed he made on August 18, 1853, to the remote grantor of Miller, operated as a conveyance of the life estate by the curtesy. But in the case at bar, as has already been stated, there was an adverse possession, in her lifetime, against the fee simple title of the ancestress of the appellant, and when she died, in 1868, it continued, under the rule that governs the operation of limitation statutes, to run against that fee simple title, no matter whom it was vested in; and the fact that at her death a life estate by the curtesy was, by operation of law, carved out of her estate, did not have the effect of stopping the statute from running against the entire estate that had been vested in her.

In *Jackson* v. *Schoonmaker*, 4 Johns. 390, the decision turned upon the question whether or not there was a disseizin or adverse possession existing at the time of the

death of Josephat Dubois, the devisor. By his will he gave an estate to his widow for life, and after her death the remainder in fee to his daughters. The testimony was contradictory and very uncertain upon the issue of fact above indicated. Under the circumstances of the case the court refused to disturb the verdict, but Chief Justice KENT, in delivering the opinion of the court, said that the court would have been as well, if not better, satisfied if the verdict had been the other way. He also said: "Assuming it as a fact that Dubois was not disseized, and that no adverse possession existed against him, in his lifetime, of the premises recovered, it is then a settled position that no subsequent disseizin or adverse possession would bar the right of the lessors, if they brought their suit (as it appears they did) within twenty years after the death of the widow. Neither a descent cast nor the Statute of Limitations will affect a right if a particular estate existed at the time of the disseizin." See, also, *Moore* v. *Jackson*, 4 Wend. 59.

In *Bozeman et al.* v. *Browning et al.* 31 Ark. 364, the appellants claimed, in avoidance of the Statute of Limitations, that they were devisees in remainder under the will of Joseph A. Browning, and that they had no right of action until the termination of the intermediate life estates of John and Nancy Browning, and that the suit was commenced within the period of limitation after the death of the latter, who survived the former about twenty-four years. But the court held, that since appellees went into possession of the lands in the lifetime of Joseph A. Browning, and held adverse possession of the same, and the Statute of Limitations commenced running against him and was running at the time of his death, the attempt of appellants to interpose the intermediate life estates as the means of creating in them an additional or cumulative disability to sue, and thereby to interrupt the running of the statute, was unavailing to stop the running of the statute.

We know of no authority for saying that the case of a subsequently intervening particular estate is one of the few exceptions to the general rule that the fact or condition which will impede the operation of the statute must be a fact or condition existing at the time the right of action accrues, and that if the statute once begins to run its course, an after-occurring fact or condition will not stop it before it becomes a complete bar. The cases relied on by appellant are not cases in which there was a particular estate commencing after the cause of action accrued, and we do not regard them as here in point. Our conclusion therefore is, that the title of appellant was barred at law on or before the first day of December, 1886, whereas this suit was not brought until August 26, 1891.

This suit is in equity, and it is urged that even if all other relief should be denied, yet that the title of Eliza B. Beattie should be restored and established as it was of record when the record was destroyed, and that petitioner has the right, at all events, to demand that much. The power of attorney and the deeds executed thereunder were placed upon the public records a quarter of a century prior to the filing of the petition. In the meantime rights had accrued to numerous third parties, based upon faith in the public record that is now sought to be attacked. The ancillary relief of restoring the title of his ancestress would have done the petitioner no good. At the same time, it would have worked a cloud upon the title that had its origin in the Caulfield power of attorney and that is protected from assault by the bar of the statute, and would have been a menace and an injury to those interested in that title. The rule is, that equity will not do that which will be of no benefit to the party asking it, and an injury to others. *Green et al.* v. *Green,* 34 Ill. 320; *Joliet and Chicago Railroad Co.* v. *Healy et al.* 94 id. 416; *Werden* v. *Graham,* 107 id. 169.

The decree of the circuit court is affirmed.

*Decree affirmed.*