In re Estate of George Glauner, Deceased.
Walter A. Olsen and Fred B. Houghton, Administrators De Bonis Non with the Will Annexed, Appellees, v. Hartford Accident and Indemnity Company, Appellant.

Gen. No. 39,291.

Opinion filed March 15, 1937. Rehearing denied March 29, 1937.

WILLARD R. MATHENY and LOUIS A. LANGILLE, all of Chicago, for appellant.

WALTER A. OLSEN and FRED B. HOUGHTON, all of Chicago, for appellees.

Mr. Justice McSurely delivered the opinion of the court.

The administrators *de bonis non* in the estate of George Glauner, deceased, filed a petition in the probate court alleging a deficiency in the accounts of Phillip E. Miller, former executor, and asked for an order that the Hartford Accident and Indemnity Company, a corporation, as surety on his bond, be directed to pay the shortage; answer was filed by the surety and after hearing the court denied the petitioners' prayer; appeal was had to the circuit court, which ordered that the defendant pay to the petitioners $2,153.24 with interest and costs, and defendant appeals to this court.

In the administrators' petition it was alleged that Miller, former executor, was insolvent; that there was a shortage of $2,153.24 in his accounts and that defendant was surety on his bond; defendant in its answer alleged that when the estate was opened, joint control over the estate was established between the executor, Miller, and the defendant whereby the funds of the estate could be withdrawn only by their joint action; that as consideration for their cancellation of the joint control the beneficiaries, Berthold and Emil Glauner, executed and delivered a specific indemnity agreement whereby they agreed to save the defendant harmless from any loss arising under the executor's bond; that there were no claims against the estate and that the sole beneficiaries are Berthold and Emil Glauner, who signed the indemnity agreement; that it would be a useless act to require defendant to pay the estate the amount of the shortage and then reimburse itself under this indemnity agreement from Berthold and Emil Glauner.

The question for determination is whether the indemnity agreement is a bar to the relief sought by the administrators. It is conceded that Berthold and Emil are the sole distributees in the estate under the will,

that all claims and bequests have been paid and that any moneys paid into the estate would go by way of distribution to them. It is not controverted that the defendant executed and delivered its executor's bond for Miller on September 6, 1928; that at this time what is termed a joint control agreement was signed by both and notice was given on September 10th to the State Bank of Chicago, inclosing this joint agreement to the effect that all moneys deposited by the executor to the account of the estate and in a deposit box rented by the executor were to be under the joint control of the executor and the defendant, and that all checks, drafts or other legal orders drawn by the executor against the funds must be honored only when consented to by the defendant or its authorized representative, and entry to the safety deposit box could be had by the executor only when accompanied by an authorized representative of defendant.

Some time thereafter the executor, Miller, asked the agent of defendant if it would release this joint control and was told by the agent that this would be done provided Berthold and Emil executed and gave to defendant an indemnity agreement; Miller promised to obtain this, and a form of indemnity agreement was delivered to him to secure their signatures; Berthold Glauner lived in Detroit, Michigan, and Emil Glauner lived in Brooklyn, New York; the document was forwarded to them and they with Miller executed it and it was delivered to defendant who thereupon, on September 14th advised the bank in writing that it had released joint control and that Mr. Miller should have access to the safety box without the presence of a representative of defendant.

The administrators contend that this indemnity agreement was procured by the fraud of Miller, because in his letter sent to Berthold Glauner inclosing the indemnity agreement for signature, it was said that this was necessary because of the ''non-payment

of the costs'' which Miller said he would advance and later repay himself from money coming into the estate. We do not see how this representation could be called a fraudulent statement inducing the Glauners to sign the agreement. The agreement was received by them in the mail; both are able to read and write the English language, are of mature years and experienced in business. If they were uncertain as to its meaning they could readily have consulted counsel. After the preamble, in the very first provision, the Glauners agreed to indemnify and save harmless the surety on its bond from and against any and all demands, liability, loss, cost, damage or expense of whatever nature or kind which the surety may at any time incur or sustain by reason of executing the executor's bond, and that they will pay over and reimburse and make good to the surety all sums and amounts of money which the surety shall pay or become liable for under such bond.

Where a party is in possession of his mental faculties and has the opportunity of ascertaining the truth of representations made and does not avail himself of the means of knowledge, he cannot be heard to say that he was deceived by misrepresentations. *Dickinson v. Dickinson,* 305 Ill. 521, 527.

The main point in argument by the administrators is that there was no consideration for the indemnity agreement. The evidence shows that both the Glauners desired to have the executor make a substantial payment to them out of the estate prior to the statutory period of one year after death. While the evidence is circumstantial there are substantial reasons for concluding that Berthold, Emil, and the executor, Miller, wished to terminate any control of the estate funds by the defendant. After the termination of the joint control and the execution of the indemnity agreement each of the Glauners was paid $2,000 by the executor. Berthold Glauner, in answer to an inquiry as to how he came

to get this $2,000 from the estate, replied that Miller had told him to write a letter that he needed the money and have his brother write a similar letter at the same time; such a letter was written November 2, 1928; Emil Glauner was not in Chicago after September 1, and Berthold Glauner was not in Chicago after this date until sometime after November 28th, so that this conversation, in which the Glauners asked the executor to advance money from the estate before they would normally be entitled to receive it, must have occurred prior to the time when defendant released joint control.

It is also in evidence that the Glauners were expeditious in executing and forwarding the indemnity agreement. It was first sent to Berthold in Detroit and then by him to his brother Emil in Brooklyn by special delivery, with the request that Emil return it after execution by special delivery, and then Berthold forwarded it to Chicago by special delivery.

The trial court in announcing its opinion said: "The Glauners wanted something. Everything would have been all right if they did not want $2,000 apiece. The money would have been there because they would have had joint control. Now, if the Glauners had done no affirmative act of their own the money would have been there and the bonds would have been there." We think this finding was justified, and that one of the considerations for their signing the indemnity agreement was the desire of the Glauners to obtain early payment on account of their share in the estate.

Many other points are made in the briefs of counsel, but we hold Berthold and Emil Glauner to their agreement to make good to the surety all sums and amounts of money the surety may become liable for by virtue of its bond.

It follows, therefore, that if the defendant should pay into the estate the amount of the shortage of the executor, this amount would be distributed equally be-

250

tween Berthold and Emil Glauner, and the defendant would then be compelled to proceed against them to recover back the money they have agreed by the indemnity agreement to repay. This would be requiring a useless thing and this is not favored by the courts. *Beattie v. Whipple,* 154 Ill. 273.

Under the circumstances the situation leads to the conclusion that the administrators are not the real parties in interest in this litigation; that the real parties are the Glauners; the interest of the administrators is purely abstract and of no value to the Glauners, as they are obligated to repay to the defendant.

The administrators have filed a cross appeal claiming a larger amount of interest than allowed by the order of the circuit court. As we are holding that the entire judgment order of the circuit court must be reversed, this disposes of the cross appeal.

For the reasons indicated the judgment order of the circuit court is reversed and the cause is remanded with directions to dismiss the supplemental petition of the administrators.

*Reversed and remanded with directions.*

MATCHETT, P. J., and O'CONNOR, J., concur.