WALTER J. RUNYON AND RUTH RUNYON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7707. Promulgated February 19, 1947.

*Harold Cox, Esq.*, for the petitioners.
*Stanley B. Anderson, Esq.*, for the respondent.

**356**

OPINION.

TYSON, *Judge*: The first issue is whether the facts herein entitle petitioner to the claimed bad debt deduction of $930 under the applicable provisions of section 23 (k) (1) of the Internal Revenue Code as amended by section 124 of the Revenue Act of 1942 and section 113 of the Revenue Act of 1943, which amendments became effective for taxable years beginning after December 31, 1938, except that the last sentence of section 23 (k) (1), as amended, with respect to nonbusiness debts became effective for the taxable years beginning after December 31, 1942.[1]

Each of the nine debts claimed by petitioner to have become worthless during 1941 was created by petitioner making an unsecured loan on a promise of repayment within a comparatively short time. One loan was made in 1940 and the other eight were made in 1941. When the loans were made to Taylor and Kooney it is obvious that they were worthless in that petitioner then had no reasonable expectation of repayment; that is to say, the debts then had no value, since both Taylor and Kooney were "broke" at the time, and there is nothing in the record to indicate at that time that such status would change. Under such circumstances, the petitioner is not entitled to deduction of the amount of either debt as one that became worthless in 1941. 5 Mertens Law of Federal Income Taxation, p. 367, ¶30.11, and authorities cited.

If it be assumed that the other seven debts were not worthless when the respective loans were made, we are nevertheless of the opinion that petitioner has failed to sustain his burden of establishing that they, or any of them, became worthless in 1941.

---

[1] SEC. 23 [I. R. C., as amended]. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*   *   *   *   *   *   *

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts which become worthless within the taxable year; * * * This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.

With regard to the debts of Carter, Azzy, and Felton, it is shown that petitioner made no efforts to collect, except to make mere requests for repayment. This is not sufficient to qualify either of these debts as one that became worthless within the taxable year. 5 Mertens Law of Federal Income Taxation, p. 416, ¶30.42, citing authorities. Moreover, petitioner did not know the financial condition in 1941 of either of these three persons; nor is it indicated anywhere in the record what that condition was.

With regard to the Mills, Bryan, Galliger, and Caldwell loans, the record fails to disclose that petitioner ever made any efforts to collect beyond the mere fact that as to the Mills loan he made one request for repayment at a time not shown. The record also affirmatively shows that petitioner never investigated Bryan's financial condition and it fails to show that petitioner ever investigated the financial condition of either Mills, Galliger, or Caldwell, and nowhere in the record is the financial condition in 1941 of Mills, Bryan, Galliger, or Caldwell shown.

The respondent's disallowance of the claimed bad debt deductions totaling $930 is approved.

The second issue involves the question of whether, for Federal tax purposes and for the taxable year 1941, recognition shall be given to the partnership agreement of petitioner and his son Walter, Jr., as equal partners under the name of W. J. Runyon & Son and also to the partnership agreement between J. A. Gregory & Sons and W. J. Runyon & Son whereby the latter acquired a 50 per cent interest in the earnings of the partnership of Mid-South Paving Co.

Respondent takes the view that there was no *bona fide* partnership between petitioner and his minor son or between them and J. A. Gregory, Sr., and his sons, but merely an attempted reallocation of family income consisting of 50 per cent (or $34,789.15) of the distributable net income of the paving company, all of which he asserts was earned by petitioner and accordingly must be taxed to him in its entirety.

Petitioner contends that the partnership agreements were *bona fide* and must be recognized for Federal tax purposes and that he is taxable on only his one-half of the $34,789.15 representing the net income of the paving company distributable to petitioner and his son for the year 1941.

In the instant case we do not have the type of family partnership where the interest of a wife or minor child in a purported partnership arrangement originates solely as a gift from the husband or father in the capital assets of his business enterprise and thereafter the donee of such interest does not contribute substantially to the management of the business and renders no vital additional services

thereto, which type of arrangement is not recognized for Federal tax purposes. See *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293; *Ed Dubinsky Durwood*, 6 T. C. 682; *Floyd D. Akers*, 6 T. C. 693; *Abe Schreiber*, 6 T. C. 707; *W. A. Belcher*, 7 T. C. 182; and *John G. Scherf*, 7 T. C. 346.

At the time the two partnership agreements here involved were entered into petitioner's son Walter, Jr., was a minor 18 years old and he became 19 years old in the spring of the taxable year 1941, but under the laws of Arkansas, Walter, Jr., was a competent person, in that his agreement was voidable only at his own instance.[2] After becoming of age Walter, Jr., ratified the agreements. The partnership agreement between petitioner and Walter, Jr., was made during June 1940 in view of the contemplated formation of the new partnership under the name of Mid-South Paving Co. and, while it was an oral agreement, it was made known to and was fully recognized by 'J. A. Gregory, Sr., who was anxious to secure the services of petitioner and also of Walter, Jr. The petitioner and J. A. Gregory, Sr., in the presence of Walter, Jr., had theretofore discussed engaging in the contracting business and, on July 1, 1940, the agreement was made and reduced to writing. Such written agreement was between the two partnerships of J. A. Gregory & Sons and W. J. Runyon & Son, and the interested parties recognized Walter, Jr., as an equal partner in W. J. Runyon & Son. Under the terms of the agreement, the Gregorys were to shape the company's policies and contribute the necessary working capital and the Runyons were to contribute services only by taking charge of the actual construction work in the field. The agreement between petitioner and his son Walter, Jr., and the subsequent agreement between J. A. Gregory & Sons and W. J. Runyon & Son, under which latter agreement petitioner and his son and J. A. Gregory, Sr., and his sons became partners, were business transactions made for the purpose of carrying on the partnership business of contracting work, particularly asphalt paving.

Those agreements remained in full force and effect during part of 1940 and throughout the taxable year 1941.

Walter, Jr., rendered services to the paving company during 1940, but, since that year is not before us, we are not concerned with the value thereof, except as it reflects on the question of whether there was a bona fide partnership for tax purposes in the year 1941. From July 1941, when work was started on an asphalt job at Camp Living-

---

[2] In *Davie* v. *Padgett*, 117 Ark. 544; 176 S. W. 833, the Supreme Court of Arkansas said: "The contract of an infant is not absolutely void but is only voidable at the instance of the infant himself. This court in *Bozeman* v. *Browning*, 31 Ark. 364 said: 'As a general rule, no one but the infant himself, or his legal representatives, executors, and administrators, can avoid the voidable acts, deeds, and contracts of an infant, for, while living, he ought to be the exclusive judge of the propriety of the exercise of a personal privilege intended for his benefit.' "

ston, Louisiana, until the end of the year and until the job was completed in 1942, Walter, Jr., devoted his entire time to the work. He was then a full grown, capable, and energetic young man; he was in charge of the asphalt plant, the maintenance of equipment, and the crews of workmen; and his services proved more valuable to the venture of the paving company than the services of petitioner, who was ill from a heart attack during part of 1941. By agreement of all of the partners in the Mid-South Paving Co., Walter, Jr., was paid a salary as fair compensation for extra services, the salary being in addition to his share of the profits as a full partner having a 25 per cent interest in the earnings of that company.

We think the facts clearly establish that during 1941 Walter, Jr., rendered "vital" additional services to the partnership of Mid-South Paving Co. within the rule of the *Tower* and *Lusthaus* cases, *supra*, and was entitled to 25 per cent of the distributable net income of that company for the year here involved.

We hold that petitioner was a partner in the Mid-South Paving Co. entitled to only a 25 per cent share of the distributable net earnings of that company for 1941, and that respondent erred in taxing to him more than one-half of the amount of $34,789.15.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

Harron, *J.*, dissents.