ALAN L. RANDALL and CATHERINE C. RANDALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Randall v. Commissioner
Docket No. 8251-75.
United States Tax Court
T.C. Memo 1980-460; 1980 Tax Ct. Memo LEXIS 124; 41 T.C.M. (CCH) 186; T.C.M. (RIA) 80460; October 14, 1980, Filed Robert B. Milgroom, for the petitioners. David Brodsky, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: The respondent determined deficiencies in the petitioners' income tax for the years and in the amounts as follows: Year Ended
Deficiencies in Income Tax
1967
$ 4,081.42
1968
5,571.00
1970
2,697.23
1971
2,532.90
1972
1,670.00
1973
1,051.55
Due to concessions by the parties, the issues remaining for decision are (1) whether the petitioner *125 [1] is entitled to a bad debt deduction of $50,000 in 1970; (2) whether petitioner is entitled to a bad debt deduction of $25,000 in 1973; and (3) whether petitioner is entitled to a $19,400 business loss deduction in 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and the attached exhibits are incorporated herein by reference. At the time the petition was filed in this case, the petitioners resided in Randolph, Vermont. The petitioners filed joint Federal income tax returns for each of the calendar years 1967, 1968, 1970, 1971, 1972 and 1973 with the Internal Revenue Service in Burlington, Vermont or Andover, Massachusetts. During the years 1969 to 1972, the petitioner was engaged in the woodcutting business in Northfield Falls, Vermont. In January, 1969, the petitioner purchased some wood-turning equipment in Canada at a cost of $43,040.90. He intended to ship this equipment to his Vermont plant to expand the business. When two key employees informed *126 him that they were leaving his employ, the petitioner determined that he lacked the capability to expand his business in Vermont. He left the equipment in Canada until he could dispose of it. Shortly thereafter, in January 1969, the petitioner sold the wood-turning equipment to Edward F. Dennis (hereinafter referred to as "Dennis") with the understanding that Dennis was going to form a corporation, transfer the equipment thereto, and have the corporation assume the obligation to pay for the equipment. Dennis then formed Amcan Woodcraft Limited (hereinafter referred to as "Amcan"), under the laws of Quebec Province with an authorized capital of $1,000, and transferred the wood-turning equipment to the corporation. Amcan credited an account on its records in petitioner's name with the sale of the equipment. On June 30, 1969, the petitioner loaned Amcan $50,000. Under the loan agreement entered into by the petitioner with Dennis and Amcan, Amcan agreed to repay the petitioner over 10 years in 10 equal installments of $10,000 commencing March 1, 1971. The petitioner signed this agreement as president [2] of the corporation and lender. As collateral to ensure performance of the *127 corporations's obligation to repay, all of Amcan's issued and outstanding 100 shares of common stock were endorsed in blank and held in escrow by Dennis' lawyer.
At some time during 1971, Amcan's plant shut down for three or four days when the power company turned off the electricity due to nonpayment of bills. This was the only time that the Amcan plant was forced to stop operating until all operations ceased in 1975. Amcan suffered continued financial difficulties between 1969 and 1975. In June, 1971, the petitioner agreed to post-pone commencement of the repayment of his $50,000 loan to March 31, 1973, so that the corporation could obtain additional financing. In January, 1972, Amcan obtained loans from two Canadian banks, a condition to which loans was the subordination of Amcan's obligation to repay the petitioner. Amcan obtained a long-term loan of $70,000 from RoyNat Limited, a Canadian government bank, and a general bank credit of $15,000 from *128 the Canadian Imperial Bank. Included as security for the RoyNat loan was Amcan's wood-turning equipment purchased from the petitioner. In March, 1975, Amcan ceased operating. At that time, the balance on Amcan's outstanding debt to RoyNat was $52,800. In order to retain the wood-turning equipment and prevent RoyNat from foreclosing on it, the petitioner paid the outstanding balance on the debt, $52,800, to RoyNat. Thereafter, the petitioner and Dennis formed a new Canadian corporation called Carlan, which was located in the same building as Amcan and operated the same business previously carried on by Amcan. The petitioner transferred the equipment to the new corporation. For the fiscal years ended March 31, 1970, March 31, 1971, March 31, 1972 and March 31, 1973, Amcan reported no taxable income on its Canadian corporate income tax returns. The petitioner never received any payments from Amcan or Dennis for the equipment he sold or for the amounts he loaned to Amcan.The petitioner never brought suit in any court to recover any amount owed to him by Amcan. On their joint Federal income tax return for 1970, the petitioners, Mr. and Mrs. Randall, deducted $50,000 as *129 bad debt arising from the sale of equipment to Amcan. The petitioners later filed an application for tentative refund for claimed net operating loss carrybacks from 1970 to 1967 and 1968, and net operating loss carryforwards from 1970 to 1971 and 1972, in connection with the $50,000 bad debt deduction claimed for 1970. The respondent disallowed the bad debt deduction and all carrybacks and carryforwards associated therewith. On their joint income tax return for 1972, the petitioners deducted $19,400 as a loss arising from the unsuccessful attempt to start a logging business. The respondent disallowed this deduction for failure to substantiate the existence of a logging business. On their joint income tax return for 1973, the petitioners deducted $25,000 as a bad debt arising from the unrepaid loan to Amcan. The respondent disallowed this deduction. OPINION The first two issues for decision involve the propriety of petitioner's bad debt deductions in 1970 and 1973. A decision under section 166[3] necessarily involves at least a two-fold inquiry: whether the debts were business *130 or nonbusiness debts, and the year in which the debts became worthless. The critical issue in this case involves the determination of the year when the debts from the sale of equipment and loan to Amcan became worthless. As used in section 166, "worthless" refers to actual worthlessness as determined by objective standards. Whether or not a debt has become worthless within a particular year is a question of fact, the burden of proving which rests upon the petitioner. Redman v. Commissioner,155 F.2d 319 (1st Cir. 1946); Perry v. Commissioner,22 T.C. 968 (1954). We think that the facts of record concerning Amcan and the petitioner's actions in relation to Amcan indicate that the debts did not become worthless in the years claimed by the petitioner. The petitioners deducted a $50,000 bad debt on their 1970 joint income tax return. An explanation of the deduction stated: Started new business in Canada, *131 but the first and only customer, Amcan Woodcraft Limited of Montreal, Canada, became insolvent and may go into bankruptcy shortly. It is doubtful whether any recovery from this sale will be realized. Legal action is being started, but recovery may be less than legal fees and expenses. The petitioner sold Amcan the wood-turning equipment on account in 1969, only one year before he claimed this $50,000 bad debt deduction. At the end of 1970, Amcan had been operating for less than two years; it continued to operate thereafter for four years. Alhough Amcan was financially troubled throughout its existence, it did continue as a going concern until March, 1975. The petitioner's loans to Amcan during the years in issue and the subordination of his $50,000 loan so that Amcan could strengthen its financial position indicate that the petitioner did not abandon hope of recovery in 1970 on the debt from the sale of equipment. Moreover, even if this debt did become worthless in 1970, which it did not, the petitioner could only deduct his basis of $43,049.90 in the equipment, under section 166(b). *132 He book insolvency of a corporation and the possibility of bankruptcy do not necessarily establish the worthlessness of debts owed by the corporation when it continues to actively engage in business. Trinco Industries v. Commissioner,22 T.C. 959 (1954); Riss v. Commissioner,56 T.C. 388 (1971), affd. (revd. on other grounds), 478 F.2d 1160 (8th Cir. 1973). Similarly, the mere fact that a business in on the decline, Bullock v. Commissioner26 T.C. 276 (1956), affd. 253 F.2d 715 (2d Cir. 1958), or that it has failed to make a profit, Rogers Peet Co. v. Commissioner,21 B.T.A. 577 (1930), will not, without more, conclusively support worthless bad debt treatment of the business' obligations. After carefully considering the evidence, we think it clear that the petitioner has failed to prove that the debt arising from the sale of equipment became worthless in 1970. Accordingly, we hold that the petitioners are not entitled to any bad debt deduction in 1970. Such holding also means that the petitioners are not entitled to the carryback or carryforward of net operating losses claimed *133 by them in connection with the bad debt deduction. [4]
The petitioner loaned Amcan $50,000 in 1969. Under the original loan agreement, the repayment of the loan was not to commence until March, 1971. In June, 1971, the petitioner agreed to postpone the commencement of the loan repayments until March, 1973, so that Amcan could secure badly needed financing. The petitioner testified that he took these actions believing that Dennis could turn the corporation around and provide a significant return on the petitioner's loan. However, no payments were ever received by petitioner on his loan. The petitioners deducted $25,000 on their 1973 joint income tax return. The petitioner contends that this deduction is for the partial worthlessness of Amcan's obligation to repay the $50,000 loan. Section 166 makes a distinction *134 between business and non-business bad debts. Business bad debts are deductible from ordinary income. Nonbusiness bad debts are deductible by taxpayers other than corporations only as short-term capital losses. Section 166(d). Business bad debts are deductible in the year they become partially or wholly worthless. Nonbusiness bad debts are only deductible in the year they become wholly worthless. Section 1.166-5(a), Income Tax Regs. Therefore, we must determine whether the $50,000 loan to Amcan resulted in a business or nonbusiness debt. Only if a debt bears a proximate relation to the taxpayer's trade or business will it qualify for business bad debt treatment under section 166. Whipple v. Commissioner,373 U.S. 193 (1963). Whether a bad debt has a proximate relation to the taxpayer's trade or business is determined by the "dominant motivation" of the taxpayer in creating the debt. United States v. Generes,405 U.S. 93 (1972), rehearing denied, 405 U.S. 1033 (1972). This Court has held on numerous occasions that loans to corporations by taxpayers who are not actually in the lending business or whose *135 lending activities are not so extensive as to constitute a separate business create only nonbusiness debts. Imel v. Commissioner,61 T.C. 318 (1973); Smith v. Commissioner,60 T.C. 316 (1973). At the time the petitioner loaned Amcan $50,000, he was in the woodcutting business in Vermont; he was not in the business of moneylending. Although he testified that occasionally he made loans to people he liked, this is certainly not sufficient to establish a separate business.Therefore, we must conclude that a nonbusiness debt resulted from the petitioner's loan to Amcan. As previously noted, this debt is deductible only in the year it became wholly worthless. Amcan agreed in June, 1971, to commence repayment of the $50,000 loan on March 30, 1973. When this first payment was not received in 1973, the petitioner deducted $25,000 as a worthless bad debt. The evidence shows that the $50,000 loan to Amcan was intended as a long-term loan to be repaid over a period of 10 years. Therefore, the repayment of the debt was rescheduled from 1973 to 1983 under the June, 1971 agreement. In 1973, only one payment was in default, not the entire debt. When *136 Amcan defaulted on the first payment, the petitioner made no reasonable efforts at collection. Even if the petitioner introduced evidence of demand and refusal to pay, which he did not, this would not be conclusive on the issue of worthlessness because it does not follow from such a showing that the debtor is unable to pay. Runyon v. Commissioner,8 T.C. 350 (1947); Prescott State Bank v. Commissioner,11 B.T.A. 147 (1928). In our opinion, the petitioner has failed to introduce sufficient evidence concerning Amcan's financial condition during and at the end of 1973. Numerous cases have denied a bad debt deduction because there was no showing of the debtor's total lack of ability to pay the debt. Pierson v. Commissioner,27 T.C. 330 (1956); Trinco Industries v. Commissioner,supra.
We think the facts of record show that the petitioner never abandoned hope of recovery on the debt. In fact, even when Amcan finally ceased operating in 1975, the petitioner invested another $52,800 to retain Amcan's equipment for *137 use in another corporation. The petitioner testified that with this payment he hoped to keep the business operating, under a new name, and recover all his money. It is our opinion that the petitioner has failed to prove that the debt on the $50,000 loan to Amcan became worthless in 1973.The evidence tends to show that this debt and the debt from the sale of equipment became worthless when Amcan ceased operating in 1975, a year which is not before the Court. We hold that the petitioners are not entitled to any bad debt deduction for 1973. An issue remains concerning a $19,400 business loss deduction taken by the petitioners on their 1972 joint income tax return. An explanation of the deduction stated: Tried to start a logging business but it went bust before any income was received. To substantiate this deduction the petitioner produced two canceled checks drawn on his account payable to his son, Barry Randall. The petitioner further testified that he paid $8,200 to the Randolph National Bank, Randolph, Vermont, on a note signed by his wife, Catherine C. Randall. The petitioner testified that all these funds were used by his son as down payments on purchases of various *138 pieces of equipment used in logging. He and his son were to participate in the alleged logging business together, but the business was never actually started. We find that the petitioner has failed to meet his burden of proof in substantiating this deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. The petitioner failed to produce any evidence showing the existence of or his involvement in a logging business such as receipts, invoices, bills of sale, or canceled checks in the names of dealers showing the purchase of any equipment. The checks produced do not show any expenditures by the petitioner himself in a logging business; rather, they are payable to his son. Therefore, we hold that the petitioners are not entitled to a business loss deduction of $19,400 in 1972. Decision will be entered for the respondent.
Footnotes
1. Throughout this opinion "petitioner" refers to Alan L. Randall. Catherine Randall is named in the action only because joint income tax returns were filed for the years in issue.↩
2. Petitioner testified that although he was listed as president of Amcan on corporate documents, he never performed any services for Amcan other than as a lender; the corporation was directed and managed solely by Dennis.↩
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.↩
4. Since the petitioner did not argue the partial worthlessness of the debt arising from the sale of equipment, and because of our ultimate finding that that debt became worthless in a year not before the Court, we do not address whether it was a business or non-business debt.↩